**R. D. CLEMONS and Hazel Clemons,**
**Plaintiffs,**

v.

**Charlotte RUNCK and Reno Runck, Jr.,**
**Defendants.**

**No. C–1–74–166.**

United States District Court,
S. D. Ohio, W. D.

Nov. 3, 1975.

Robert F. Laufman, Brown, Dennison & Klayman, John G. Cobey, Cohen, Todd, Kite & Spiegel, Cincinnati, Ohio, for plaintiffs.

John D. McClure, Nieman, Aug, Elder & Jacobs, Cincinnati, Ohio, for defendants.

## MEMORANDUM OPINION

HOGAN, Chief Judge.

This is a claim for racial discrimination in housing involving a sale of a vacant lot by defendants, Charlotte and Reno Runck, Jr., to plaintiffs, David and Hazel Clemons, for the building of a house. This suit was brought under both the Civil Rights Act of 1866, 42 U. S.C. § 1982 (1866),[1] and the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq. (1968).[2]

On March 27, 1974, the defendants accepted in writing the plaintiffs' offer to purchase the lot in question. There was testimony at trial that after the defendants had accepted the offer, Reno Runck discovered that the plaintiffs were black and stated to the real estate agent that he would not sell the lot to the plaintiffs because of their color. Indeed, on May 1, 1974, the final day for closing stated in the contract, Mr. Runck refused to consummate the sale. On May 3, 1974, plaintiffs filed this action and were granted a Temporary Restraining Order enjoining the defendants from selling the lot to anyone else. A preliminary injunction hearing was scheduled for May 9, 1974. A preliminary injunction became unnecessary, however, when the defendants agreed on May 9, 1974 to convey the lot to the plaintiffs on May 15, 1974. The contract to purchase the lot was amended to reflect May 15 rather than May 1 as the date for closing

---

1. 42 U.S.C. Section 1982 provides:
   All Citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

2. 42 U.S.C. Section 3601 provides:
   It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States.

the deal. Title to the lot was in fact transferred to the plaintiffs on May 15.

The defendants then moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that there was no refusal to sell upon which the plaintiffs could recover because the lot had actually been conveyed to the plaintiffs. As the amendment of the contract to purchase was not made in settlement of the plaintiffs' action, the question of whether damages should be awarded and, if so, the amount remained to be decided. Accordingly, on the basis of *Cash v. Swifton Land Corp.*, 434 F.2d 569, 572 (6th Cir. 1970), the defendants' motion was denied and the case was set for trial before a jury on the question whether defendants' refusal to sell or convey the lot on May 1, 1974 was due to the race or color of the plaintiffs.

At the close of the evidence, the Court gave the following instructions to the jury:

THE COURT: * * * Now, there is a section of the United States Statute passed by Congress in 1866 known as the Civil Rights Act. It provides this, that: "All citizens of the United States shall have the same right, in every state, as is enjoyed by white citizens thereof, to inherit, purchase, lease, sell, hold and convey real and personal property."

In 1968 Congress saw fit to reaffirm that and expand it in what we know as the Fair Housing Act of 1968, and that Act insofar as it's applicable to this case provided, and provides, that:

"To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, or national origin," is forbidden.

Also forbidden by that Act is this: "To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, or national origin."

I don't know how they left "gender" out of that, but they did. (Laughter.) That was a big mistake, but they subsequently have corrected that mistake.

Now, it's agreed by all the parties to this case, and it is the law, that a vacant lot is a dwelling within the meaning of the Fair Housing Act.

Now, there are some things that are agreed on in this case for all practical purposes. First, there isn't any doubt that there was a contract of sale entered into between the parties to this case. You will have this with you in the jury room. No doubt about that. Everybody agrees on that.

Second, there isn't any doubt that at least on May the 1st the defendants temporarily—now, whether more than temporarily or not, that's your problem—but temporarily at least by that time refused to close that contract. There is no doubt about that. O.K.?

There isn't any doubt that right promptly the plaintiffs filed this lawsuit, the lawsuit that you are now hearing, and asked that the defendants be ordered to sell them the property pursuant to this contract, and asked also for damages for the failure to close the contract, making the claim that the reason or one of the reasons of the failure to close was race. Now, there is no doubt about those things.

Then there is no doubt that practically the next day, right quick—I guess it was the next day—after this lawsuit was filed, everybody gets together and they start negotiating. There there is no doubt—I don't have the exhibit in front of me. What's the number, that amendment business? But there isn't any doubt that this amendment to that contract was signed by both the parties, and you will have the amendment in the jury room with you. And then there is no doubt that there was a deed from the defendants to the plaintiff in this case. O.K.? No doubt about that.

Your first problem is this: Why didn't this contract close?

Now, the plaintiff in this case in order to win, to get a verdict for the plaintiff, has to establish by a preponderance of the evidence two things: First, that the defendants refused to convey the property on or about May the 1st, 1974; and, second, that the reason for this temporary failure, refusal to close, or one of the reasons—and I repeat—the reason or one of the reasons for the failure to close, was race.

If the plaintiff establishes both of those by a preponderance of the evidence, the plaintiff is entitled to a verdict against these defendants. If the plaintiff fails to establish either one of those by a preponderance of the evidence, then your verdict should be for the defendant.

Now, race is an impermissible factor in the sale of a vacant lot on which a dwelling is to be built. It can't be brushed aside because it was neither the sole reason nor was the total factor of discrimination. There is no acceptable place in the law for partial racial discrimination.

The Civil Rights Act involved prohibits each and every practice which has the effect of making housing more difficult to obtain on account of race or color. If you find by a preponderance of the evidence that the defendants made it more difficult for the plaintiffs to buy the lot from them because the plaintiffs were black, then you must find in favor of the plaintiffs.

The defendants admit that they temporarily refused to sell the vacant lot in question to the plaintiffs, but claim that the reason for their refusal was legitimate and had no relation to their race. If the defendants' refusal was not racially motivated, then they are not liable to the plaintiffs' claim. As has been said, the plaintiff has the burden of showing that refusal was racially motivated.

Now, the defense has claimed that the reason for the failure to close was that the defendant knew, or thought he knew, that the house designated by plan in the offer and acceptance could not be built and that the defendant believed that under the terms of this contract if the sale was closed the plaintiffs had a right to call it all off, reverse it, rescind, get their money back.

Now, as a matter of law, that's wrong, but that's not the end. That's not the end of it, because while we are all presumed to know the law, we all know better; we don't. It's a matter of what was in his mind, what was in their mind.

And if you find, if it be your conclusion that the sole reason for the failure to close this contract on May 1st was that belief and that belief was bona fide, honest, not trumped up, honest—if you find that that was the sole reason and that that was a bona fidely held belief, then your verdict would be for the defendant.

On the other hand, if you find that race, even though there was that bona fide belief, if you find that race entered into, constituted any recognizable factor in this failure to close, or if you find that the failure to close was due to two causes, one race, one this belief—if it was a belief about the building—then your verdict would have to be for the plaintiff. O.K.? Is that clear? Then we will not berate it.

Now, of course, if your verdict is for the defendant on liability, that's the end. You just say so and that's the end of your deliberations.

However, if your verdict is for the plaintiff, then you go to the question of damage; and the fact that this Court charges you on the question of damage is no indication that this Court has any belief one way or the other what your verdict is going to be on liability. It's the obligation of a court to charge a jury on every question which the jury may reach in their deliberation, and this Court has no opinion whatever of what your verdict will or should be on the matter of liability; but if your determina-

tion of liability is in favor of the plaintiff, you then go to the question of damage.

The cardinal rule in the United States on matters of damage is this—compensation. That's the general rule, and you start here; that it is compensation for the injuries caused by the incident to the extent that those injuries have been established by a preponderance of the evidence in this case. So a jury's interest is really in compensatory damage, and that's the first thing you consider; and in most cases it's the only thing you would ever consider. But your first damage consideration is compensatory, and you have got that preponderance rule and the plaintiff has the burden of showing their damages.

If your verdict be for the plaintiff, you would first award them, and you should—it would be your duty—to award them actual or compensatory damage in amount that will reasonably compensate the plaintiffs for the unlawful discrimination that they have been made to suffer by the defendants, if that be your verdict.

Plaintiffs allege by reason of their claimed injuries proximately resulting from the incident involved in this case they have sustained general damages, and they have lost an additional sum on account of time lost from both of plaintiffs' jobs, and expenses incurred in trying to secure the lot, including phone calls, trips to the lot, trips to the closing office. Each of those items to the extent they are established by the preponderance in this case are proper items of damages which are included in compensatory damage and should be included if your verdict be for the plaintiff.

You will notice we have omitted the claim of interest increase and increase in cost of construction. That is the two items on the board. The jury is instructed as a matter of law that damages for those two items may not be awarded in this case. So you will please forget them, and you will not consider either any interest increase or any construction cost increase in your deliberations of damages if you reach that point. Is that clear? O.K.

Now, there are some more items that are properly within the scope of compensatory damages. Now, if you find that the plaintiffs are entitled to a verdict, you will award them such sum as actual damage as you find will compensate him and her reasonably for any mental anguish, any humiliation, any emotional distress, already suffered by them up to and including this date to the extent they have been established by the evidence in this case by a preponderance.

So much for compensatory.

Now, ordinarily in lawsuits you stop right there because compensatory damage is the end. However, there are certain types of cases generally speaking in which, if an injury is intentionally inflicted, knowing that the law is being violated, with no excuse whatever, in which a jury may—it is strictly the province of a jury—a jury may but it is not required to; the jury applies the conscience of the community—and it may, but need not, award what is called exemplary or punitive damage.

Now, let's take one that's easy to see. Somebody comes out of their house with no reason in heaven's green earth, walks down and sees somebody and says, "I don't like the look of you," and hits him in the face and hurts him. O.K., to the extent he is hurt, compensatory damage.

That sort of thing shouldn't happen. It's intentional. There is no excuse for it. The fellow knows he is doing something wrong. So the jury is told if you think you ought to add on an amount as punitive or exemplary damage to deter other people—sort of making an example —to deter other people and stop this sort of thing you, the jury, may so do in this type of case. In addition, the law permits the jury to award an injured person punitive or exemplary damage in order to punish the wrongdoer for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct.

If you find for the plaintiffs and find from a preponderance that the act or omission of the defendant showed a wanton disregard for the rights of the plaintiff or were willfully or maliciously or wantonly or oppressively done, or that the defendants knew that their conduct was unlawful, then you may award the plaintiff such amount as the jury shall unanimously agree to be proper as punitive and exemplary damage.

Now, an act or a failure to act is maliciously done if it's prompted or accompanied by ill will, by spite, by grudge toward the injured persons, individually, or toward all persons in one or more groups or categories of which the injured person is a member.

An act or failure to act is wantonly done if done in reckless or callous disregard or indifference to the rights of one or more persons, including the injured person.

An act or failure to act is oppressively done if done in a way or manner which injures or damages or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power or by taking advantage of some weakness or some disability or some misfortune of another person.

Now, several things about this punitive or exemplary damage thing. First, under the Civil Rights Act there is no —as you and I would say if we were talking outside on the street—there is no limitation that the jury has on the exemplary damage award. The sky is the limit. That's the way we say it out in the street. Of course, this is a reasonable, sensible jury, and we are taking that as an extreme.

However, the jury should be informed of this: Under the Fair Housing Act, Congress, dealing with the same subject, has put a limitation on what a court, say, can award or what a jury can award under that Act of $1,000.

Now, we repeat, the fact that the thousand limit applies to the Fair Housing Act is no limit and you are not limited to the thousand as a matter of law. You are not limited to that if you reach this point in applying the Civil Rights Act of 1866.

You may—in fact, this Court says you should—take into consideration the expression of Congress for what value you, the jury, think it has. At least federal courts are getting jumped on all around the country for supposedly disregarding Congress. So at least we will tell you that you may, it's the jury's province to take that into consideration in passing on this point.

One other thing. We have already told you that if on your liability question two things cause this failure to close, one of which is race, the plaintiff wins.

Now, when you get around to this punitive damage question, if you get around to it, you come back to the same proposition; and if you find that two things caused this, one race, the other a bona fidely held belief, don't, as a matter of law, award punitive damage.

It's something like the fellow that pokes somebody in the nose. If he has been given to believe that somebody is going to get him and he figures a good offense is the best defense and he gets him first, that's not a punitive damage case if his belief that he was going to be attacked is bona fidely held. So you get back to that question if you get in here.

Now, one other matter of damage— and we certainly thank you for your attention—and then we are through except for the housekeeping part of it.

Now, there is a principle of law— Well, you start here. Ordinarily everybody pays their own attorney's fees, their own freight in that field, but there is a principle of law applicable to this type of situation. Sometimes there is an expression of national policy, and the duty is devolved on the Attorney General of the United States to enforce it in the sense that under certain circumstances it said he may do something about it; and in the same type or same field private citizens may enforce that

policy too. In an antitrust case brought by a private citizen, they are enforcing the national policy against trusts—the plaintiff is. It is the same way in this kind of case. This is the type of case that could be prosecuted for our purposes by the Attorney General or by an individual. So that when an individual sues he is really not only enforcing something for his own benefit, he is enforcing something that's a national policy.

For that reason, in this type of case the jury may—again the jury is not required to—but the jury may and should give serious consideration—if its award on liability is for the plaintiff—should give serious consideration to the award of an appropriate and reasonable attorney's fee as a part of your verdict.

The amount should be such that—Well, let's put it this way. It shouldn't be peanutty because if it's peanutty it will discourage other citizens from being private attorney generals. They are saving the taxpayers money. On the other hand, it should be reasonable. It shouldn't be duplicated. It should be reasonable under the evidence in the case, and that's about all we can tell you about that. It would be the jury's determination of what was a reasonable attorney's fee if you get to that point in this case by reason of the liability verdict, if that be your verdict.

\* \* \* \* \* \*

The other verdict form is a little longer—if you find for the plaintiff, and it's for a technical reason that we are giving you some more than maybe you think you ought to have, if you get to the problem; and it says:

"We, the jury, being duly impaneled and sworn, find on the issues joined in favor of the plaintiffs and assess the damages at blank dollars.

"Of this amount:

"A)" so many dollars "represents actual—" remember, we talked about three different things—actual or compensatory damage, one.

Second, "punitive or exemplary."

Third, "attorney's fees."

So of this amount blank dollars represents the actual or compensatory damage, blank dollars represents punitive or exemplary, blank dollars represents attorney's fees; and then it says that the total of those three must equal, they ought to add up to the first figure. And then it says—because some of you may get to wondering that you can put a zero in. You can have a figure in the first one and a zero in both the second and third or a zero in one and a figure in another or you can have figures in all three.

And there is a technical reason. We will explain to you why, if your verdict should be for the plaintiff, it would help a lot of people and maybe save another jury a long trial if those are answered.

\* \* \* \* \* \*

The jury returned a verdict for the plaintiffs and assessed damages at $10,000. Of this amount the jury specifically found that $1,500 represented actual or compensatory damages, $3,000 represented punitive or exemplary damages, and $5,500 represented attorney fees.

In the light of the recent Supreme Court decision of *Alyeska Pipeline Service Co. v. The Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), an examination of the attorney fee award is proper.

The general rule in most American jurisdictions is that attorney fees are not awarded to the successful litigant. This rule is designed to neither encourage litigation nor penalize losing parties. The rule has not been an absolute bar to the shifting of attorney fees, however, even in the absence of statutory authority or an enforceable contractual obligation. Over the years the federal courts have developed three exceptions pursuant to their equity powers to the general principle that each party should bear its own costs of legal representation.

The first of these exceptions is designed to punish a party who has acted

in bad faith, vexatiously, or oppressively. *See, e. g., Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d (1968); *Monroe v. Board of Commissioners*, 453 F.2d 259 (6th Cir. 1972). The second exception occurs when the litigation has resulted in the creation of a common fund for the benefit of a definable class. Here a court will award attorney fees in order to spread the cost of the litigation among all those who benefit. *See, e. g., Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). A third exception, known as the private attorney general theory, has been recognized by several lower courts when the expense of litigation may act as a deterrent to the bringing of private litigation deemed necessary to enforce important public policies. *See, e. g., Taylor v. Perini*, 503 F.2d 899 (6th Cir. 1974); *Fowler v. Schwarzwalder*, 498 F.2d 143 (8th Cir. 1974); *Brandenburger v. Thompson*, 494 F.2d 885 (9th Cir. 1974); *Knight v. Auciello*, 453 F.2d 852 (1st Cir. 1972); *Lee v. Southern Home Sites Corp.*, 444 F.2d 143 (5th Cir. 1971).

■ In *Alyeska Pipeline* the Supreme Court expressly disapproved the use of the private attorney general exception in federal courts. However, the bad faith and common fund exceptions appear to have been reaffirmed by the Supreme Court in the same decision, 421 U.S. at 257–59, and this Court holds that those two exceptions remain viable and may be applied in appropriate cases. *F. D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703

(1974); *United States v. Ford Motor Co.*, 522 F.2d 962 (6th Cir., 1975); *IAM & AW, Lodge 1194 v. Sargent Indus., Inc.*, 522 F.2d 280 (6th Cir., 1975); *Samuel v. University of Pittsburgh*, 395 F.Supp. 1275 (W.D.Pa.1975).

■ The Fair Housing Act expressly provides that reasonable attorney fees may be awarded to a prevailing plaintiff when, in the opinion of the court, the plaintiff is not financially able to assume the attorney fees. 42 U. S.C. § 3612(c).[3] From the evidence in this case we note that Mr. Clemons, a high school councilor, makes $16,200 a year and $18,000 if he works during the summer. Mrs. Clemons, a special education teacher with several years of experience, makes $14,000 per year. The plaintiffs have two cars and savings of nearly $10,000. While this Court is cognizant of the fact that other courts have awarded attorney fees as a matter of course under Section 3612(c)[4] we believe that Congress meant just what it said when it limited awards of attorney fees only to those successful plaintiffs who are financially *unable* to pay said fees. In this Court's opinion, plaintiffs who make in excess of $30,000 per year are financially able to assume their attorney fees.

■ Such a finding does not, however, end our examination of attorney fees in this case. Plaintiffs brought this action under both the Fair Housing Act and the Civil Rights Act of 1866. The Civil Rights Act, 42 U.S.C. Section 1982, has no provision for attorney fees. It has been argued that the specific

---

3. 42 U.S.C. Section 3612(c) provides:
    (c) The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided,* that the said plaintiff in the opinion of the Court is not financially able to assume said attorney's fees.

4. *Williams v. Matthews Co.*, 499 F.2d 819 (8th Cir. 1974); *Steele v. Title Realty Co.*, 478 F.2d 380 (10th Cir. 1973); *McNeil v. P–N & S, Inc.*, 372 F.Supp. 658 (N.D.Ga. 1973). *See also, Marr v. Rife*, 503 F.2d 735 (6th Cir. 1975); Chandler, *Fair Housing Laws: A Critique*, 24 Hastings L.J. 159, 211 (1973); Falcon, *Award of Attorneys' Fees in Civil Rights and Constitutional Litigation*, 33 Md.L.Rev. 379 (1973); Note, *Racial Discrimination in the Private Housing Sector; Five Years After*, 33 Md.L.Rev. 288, 302 (1973).

damage limitations contained in Section 3612(c) have preempted any award that might be made under the broadly worded, older Section 1982. In *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 416 n. 20, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), however, the Supreme Court concluded that the enactment of the Fair Housing Act did not affect Section 1982 in any way. On this basis it has been held that the punitive damage limitation of Section 3612(c) is not a limitation upon a court's power to award punitive damages for housing discrimination under Section 1982. *Wright v. Kaine Realty*, 352 F.Supp. 222 (N.D.Ill.1972). Similarly, this Court believes that the power to award attorney fees under Section 1982, provided one of the exceptions to the "American rule" is applicable, is not limited by the plaintiffs' financial ability to assume such fees as it is under Section 3612(c).

 Courts have allowed plaintiffs to maintain suits under both Section 1982 and Section 3612(c) without an election of remedy. *See, e. g., Marr v. Rife*, 503 F.2d 735 (6th Cir. 1974); *Williams v. Mathews Co.*, 499 F.2d 819 (8th Cir. 1974); *Wright v. Kaine Realty, supra.* Accordingly, the case was submitted to the jury under both statutes. The jury was told about the specific limitation of $1,000 on punitive damages found in Section 3612(c). Nevertheless, the jury returned a verdict which included $3,000 in punitive damages. This Court thus concludes that the jury's award was made under Section 1982.

While Section 1982 makes no provision for attorney fees, this case falls within one of the exceptions to the "American rule." We believe from the verdict that the jury found that the defendants were acting in bad faith and we so find independently. The defendant knew he was doing wrong and it was not until this suit was filed, a Temporary Restraining Order was granted, and the time for the preliminary injunction hearing had arrived that defendants conveyed the property. It is therefore the finding of this Court that the defendants acted in bad faith and that plaintiffs should be awarded their attorney fees.

The jury returned a verdict which included $5,500 for attorney fees. If the question of attorney fees is one for the Court,[5] this Court agrees with the jury that $5,500 is a reasonable fee in this case.[6]

---

5. Whether the attorney fee damage item is a fact question for a court or jury is not one hundred percent clear and that was the reason for the form of the plaintiffs' verdict. Most authorities seem to conclude that attorney fees, if allowed, are always for the court's determination. This Court tends to the other conclusion—if juries are to pass on compensatory and punitive, then we see no reason why the amount of the fee, in a proper fee case such as this one, should be viewed as without a jury's province or capability. On this record it makes no difference since the Court and jury agree on the fact finding.

6. The Court bases its findings that $5,500 is a reasonable attorney fee on the number of hours expended by the plaintiffs' attorneys, the attorneys' usual hourly rates, the experience and ability of counsel, the successful result obtained, and the general skill displayed by the attorneys at trial, including the several fine briefs they submitted in this case.