**Cassandra PARKER, Plaintiff,**

v.

**Edwin SHONFELD and Marsha Shonfeld, husband and wife, Defendants.**

**No. C–75–1267–CBR.**

United States District Court,
N. D. California.

March 3, 1976.

Carol Ruth Silver, Dennis John Woodruff, San Francisco, Cal., for plaintiff. Frank E. Schwelb, Chief, Housing Section, Civil Rights Div., Dept. of Justice, Washington, D. C., amicus curiae brief for the United States.

Bishop & Barry, Richard S. Bishop, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION AND ORDER

RENFREW, District Judge.

This case was tried to a jury on November 25, 26 and 28, and December 1 and 3, 1975. The jury returned a verdict in favor of plaintiff, assessing damages against defendants Edwin and Marsha Shonfeld in the amount of $20,000. The verdict specified that $10,000 was awarded as compensatory damages and $10,000 as punitive and exemplary damages, the latter sum to be assessed against each of the Shonfelds in the amount of $5,000. On December 8, 1975, defendants moved for a new trial on the grounds that both the compensatory and punitive damages awarded by the jury were excessive.[1] Plaintiff, in turn, moved for award of attorney's fees and court costs. Judgment was entered by the Court on December 16, 1975, pursuant to the jury verdict, but by stipulation of counsel and order of the Court, execution of the judgment was stayed pending the Court's ruling on these motions. These motions have been thoroughly briefed by the parties; in addition, the Court has had the benefit of a brief filed by the United States as *amicus curiae,* in support of plaintiff's motion and in opposition to defendants' motion.[2]

■ The complaint in this lawsuit alleged that defendants had discriminated against plaintiff by refusing to rent her an apartment because she is black. The lawsuit was brought under both the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.,* and the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.,* also known as the Fair Housing Act. The latter act explicitly authorizes the award of reasonable attorney's fees to a prevailing plaintiff who is unable to assume those fees but, in the same subsection, limits punitive damages to $1,000.[3] There is no such limitation on punitive damages in the 1866 Act; however, attorney's fees are generally not recoverable under that Act. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 269, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141, 159 (1975).

Plaintiff contends, in essence, that her remedies under the two civil rights statutes are concurrent and cumulative. Specifically, she argues that she is entitled to recover compensatory damages under either statute, is entitled to recover under 42 U.S.C. § 1982 the full amount of punitive damages awarded by the jury, and is also entitled to recover attorney's fees and costs under 42 U.S.C. § 3612(c). She argues further that the jury's verdict is supported by the evidence and that the amounts awarded for compensatory and punitive damages are not so excessive as to justify or require the granting of a new trial or remittitur of the award.

Defendants maintain that the amounts assessed against them by the jury are

---

1. The arguments presented in the parties' briefs indicate that the parties have construed defendants' motion as one for a new trial or, in the alternative, for remittitur of the amount awarded by the jury.

2. The Court also received in letter form the views of counsel for plaintiff in *Cogar v. Dodelin,* Civil No. 74–2415–CBR (N.D.Cal., filed Nov. 15, 1974). That case also concerns the relationship between an award of attorney's fees under 42 U.S.C. § 3612(c) and of punitive damages in excess of $1,000 under 42 U.S.C. § 1982. The Court gave counsel in *Cogar* an opportunity to submit an *amicus* brief in this case on behalf of the NAACP Legal Defense and Education Fund, Inc. However, counsel informed the Court that since the issues had been thoroughly argued in the briefs submitted by the parties and by the United States as *amicus curiae,* another *amicus* brief would have added little. Therefore, counsel chose instead to submit a short summary of his views in a letter dated February 26, 1976.

3. Subsection 3612(c) of Title 42, United States Code, provides:

"(c) The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided,* That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees."

indeed excessive and unreasonable. Although defendants concede the Court's authority to award attorney's fees under 42 U.S.C. § 3612(c) and simultaneously to award punitive damages in excess of $1,000 under 42 U.S.C. § 1982, they argue that the two statutes should be construed together and that the $1,000 limitation on punitive damages in the 1968 statute should guide the Court in its determination of whether the jury's award of $10,000 punitive damages is excessive. They strongly urge the Court to reduce compensatory damages to $5,000, at most, and to reduce punitive damages to $1,000, or at most $2,000, against each defendant. Furthermore, defendants emphasize the general principle that punitive damages are designed solely to punish a defendant and not to enrich a plaintiff. They stress that 42 U.S.C. § 3612(c) permits plaintiff to recover attorney's fees only when "said plaintiff in the opinion of the court is not financially able to assume said attorney's fees", and maintain that plaintiff should be deemed to be financially able to pay her attorney's fees to the extent she receives punitive damages.

■■■ With respect to the award of $10,000 compensatory damages, the Court is not persuaded that that amount is unreasonable or excessive in view of the evidence adduced at trial. It is well established that

"Compensatory damages awardable in a Civil Rights Act case are not limited

to the out-of-pocket pecuniary loss the complainant suffered. Damages can also be awarded for emotional and mental distress caused by the intentional tort." *Donovan v. Reinbold,* 433 F.2d 738, 743 (9 Cir. 1970).

*See also Seaton v. Sky Realty Company, Inc.,* 491 F.2d 634, 636–637 (7 Cir. 1974), and cases there discussed. Particularly in cases where it is difficult in the extreme to measure a person's injury in monetary terms, the Court is reluctant to disturb a jury award which is not unreasonable on its face. The jury in this case deliberated carefully and conscientiously and determined that an award of $10,000 would adequately compensate plaintiff for the embarrassment, humiliation and anguish she suffered as a victim of racial discrimination. Under these circumstances, the Court refuses to substitute its assessment of plaintiff's damages for that of the jury.

■■■ A more difficult question is presented by the jury's award of $10,000 punitive damages. The law is clear that punitive damages are recoverable under 42 U.S.C. § 1982.[4] Moreover, when a plaintiff has proved racial discrimination in the sale or leasing of housing, the law apparently permits recovery of more than $1,000 punitive damages under § 1982, despite the limitation in 42 U.S.C. § 3612(c). Several courts have specifically so held, *e. g., Clemons v. Runck,* 402 F.Supp. 863, 868 (S.D.Ohio 1975); *Wright v. Kaine Realty,* 352

---

4. In *Jones v. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), the Supreme Court held that 42 U.S.C. § 1982 bars all racial discrimination in the sale or rental of property, but left open the question of whether damages are recoverable for a violation of that statute. Later, in *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 238–240, 90 S.Ct. 400, 405–406, 24 L.Ed.2d 386, 393–394 (1969), the Court held that damages are recoverable under § 1982, and declared in expansive terms that:

"The existence of a statutory right implies the existence of all necessary and appropriate remedies. * * *

    \*   \*   \*   \*   \*   \*

" * * * [B]oth federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal

statutes. [Citation omitted.] The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired." *Id.* at 239 and 240, 90 S.Ct. at 405–406, 24 L.Ed.2d at 393–394.

    Subsequent to that decision, many courts have permitted recovery of punitive damages under § 1982, *e. g., Clemons v. Runck,* 402 F.Supp. 863, 868 (S.D.Ohio 1975); *Allen v. Gifford,* 368 F.Supp. 317, 322 (E.D.Va.1973); *Wright v. Kaine Realty,* 352 F.Supp. 222, 223 (N.D.Ill.1972); *Tramble v. Converters Ink Company,* 343 F.Supp. 1350, 1354–1355 (N.D. Ill.1972); *Walker v. Pointer,* 304 F.Supp. 56, 64 (N.D.Tex.1969); *see also Lee v. Southern Home Sites Corporation,* 429 F.2d 290, 294–295 (5 Cir. 1970) (dicta).

F.Supp. 222, 223 (N.D.Ill.1972); other courts have permitted recovery of more than $1,000 punitive damages under § 1982 without explicit discussion of the Fair Housing Act, e. g., *Allen v. Gifford,* 368 F.Supp. 317, 322 (E.D.Va.1973). In all candor, this Court finds these results somewhat anomalous. Were this a case of first impression, the Court would give substantial weight to the argument that the more recent and specific expression of Congressional intent set forth in the 1968 Act on the issue of punitive damages in housing discrimination cases should control. However, as other courts have recognized, the Supreme Court has stated that the 1866 civil rights statutes are to be construed and applied independently of the more recent legislation:

> "Normally the 'cardinal principle of statutory construction'—that the more specific controls over the general, e. g., *Central Commercial Co. v. C. I. R.,* 337 F.2d 387, 389 (7th Cir. 1964)—would compel the result for which defendants contend. In *Jones, supra,* 392 U.S. at 416, 88 S.Ct. at 2191, however, the Supreme Court made the flat statement that '[Title VIII's] enactment had no effect upon § 1982.'
>
> "It thus appears to this Court that *Sullivan, supra,* must be read to say that in § 1982 actions, the courts are given discretionary power to grant such relief as they find necessary and appropriate, notwithstanding more recent civil rights acts and their limits on relief which are also applicable." *Wright v. Kaine Realty, supra,* 352 F.Supp. at 223.

Defendants concede, as they must, that plaintiff is not restricted to $1,000 punitive damages as a matter of law. The basic thrust of their argument, however, is that the Court should interpret the $1,000 limitation in § 3612(c) as a guideline in determining whether an award of $10,000 is unrea-

sonable and excessive. Defendants' argument has considerable merit. Its fatal flaw, though, is that it is untimely made and improperly directed to the Court. It is well established that whether a plaintiff is entitled to punitive damages, in accordance with the appropriate legal standard, and the amount, if any, of such damages to be awarded, are questions peculiarly within the competence of the trier of the fact.

> "[T]he final determination of whether punitive damages should be awarded has to be left to the discretion of the trier of fact. See *Lee v. Southern Home Sites Corporation,* 429 F.2d 290, 294 (5th Cir. 1970), wherein it is stated:
>
>> 'The allowance of such damages [referring to punitive damages] inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of the fact.' "

*Gill v. Manuel,* 488 F.2d 799, 801 (9 Cir. 1973).

See also *Fisher v. Volz,* 496 F.2d 333, 347 (3 Cir. 1974); *Stolberg v. Members of Bd. of Tr. for State Col. of Conn.,* 474 F.2d 485, 489 (2 Cir. 1973).

Had defendants requested the Court to instruct the jury that the Fair Housing Act limits punitive damages to $1,000; that as a matter of law it is not bound by that limitation; but that, if it finds plaintiff entitled to punitive damages, it may wish to consider that limitation in determining the amount to be awarded, in all likelihood the Court would have included such an instruction in its charge to the jury. Indeed, an instruction to that effect was given to the jury in *Clemons v. Runck, supra,* 402 F.Supp. at 868.[5] However, no such instruction was

---

5. The *Clemons* court instructed the jury as follows on that point:

"Now, several things about this punitive or exemplary damage thing. First, under the Civ-

requested. Instead, the jury was instructed in more general terms on the appropriate standards to be applied in determining whether to award punitive damages and the amount to be awarded.[6]

■ Under these circumstances, the Court is of the opinion that an award of

il Rights Act there is no—as you and I would say if we were talking outside on the street—there is no limitation that the jury has on the exemplary damage award. The sky is the limit. That's the way we say it out in the street. Of course, this is a reasonable, sensible jury, and we are taking that as an extreme.

"However, the jury should be informed of this: Under the Fair Housing Act, Congress, dealing with the same subject, has put a limitation on what a court, say, can award or what a jury can award under that Act of $1,000.

"Now, we repeat, the fact that the thousand limit applies to the Fair Housing Act is no limit and you are not limited to the thousand as a matter of law. You are not limited to that if you reach this point in applying the Civil Rights Act of 1866.

"You may—in fact, this Court says you should—take into consideration the expression of Congress for what value you, the jury, think it has. At least federal courts are getting jumped on all around the country for supposedly disregarding Congress. So at least we will tell you that you may, it's the jury's province to take that into consideration in passing on this point." 402 F.Supp. at 868.

**6.** The Court charged the jury as follows on the question of punitive damages:

"In addition to actual damages, the law permits the jury, under certain circumstances, to award the injured person punitive and exemplary damages, in order to punish the wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.

"If the jury should find from a preponderance of the evidence in the case that the plaintiff is entitled to a verdict for actual or compensatory damages; and should further find that the act or omission of a defendant, which proximately caused actual injury or damage to the plaintiff, was either maliciously, or wantonly, or oppressively done; then the jury may, if in the exercise of discretion they unanimously choose so to do, add to the award of actual damages such amount as the jury shall unanimously agree to be proper, as punitive and exemplary damages.

"An act or failure to act is 'maliciously' done if prompted or accompanied by ill will, or spite, or grudge, either toward the injured per-

$10,000 punitive damages was neither unreasonable nor excessive, in light of defendants' discriminatory conduct and their net worth of more than $500,000. There was evidence adduced at trial which, if believed by the jury, amply supports a finding that defendants acted maliciously, wantonly, or oppressively.

son individually, or toward all persons in one or more groups or categories of which the injured person is a member.

"An act or failure to act is 'wantonly' done if done with actual knowledge that the action is a violation of rights secured by the Constitution and the laws of the United States, or done in reckless disregard of the rights of one or more persons including the injured person.

"An act or a failure to act is 'oppressively' done, if done in a way or manner which injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person.

"Punitive damages if assessed are to be assessed against each defendant individually. That is each defendant would be punished separately—in an amount which you consider sufficient to punish them in light of that particular defendant's conduct—and that particular defendant's financial resources.

"Whether or not to make any award of punitive and exemplary damages, in addition to the actual damages, is a matter exclusively within the province of the jury, if the jury should unanimously find, from a preponderance of the evidence in the case, that the defendant's act or omission, which proximately caused actual damage to the plaintiff,, was maliciously or wantonly or oppressively done; but the jury should always bear in mind that such extraordinary damages may be allowed only if the jury should first unanimously award the plaintiff a verdict for actual or compensatory damages; and the jury should also bear in mind, not only the conditions under which, and the purposes for which, the law permits an award of punitive and exemplary damages to be made, but also the requirements of the law that the amount of such extraordinary damages, when awarded, must be fixed with calm discretion and sound reason, and must never be either awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party to the case."

As is the Court's practice, a copy of the Court's instructions was given to the jury to take into the jury room when it retired to deliberate.

The Court does not believe that defendants are entitled to either a new trial or remittitur of the punitive damages award.

The final issue remaining for consideration is plaintiff's motion for attorney's fees and costs. Plaintiff argues that she is entitled to those expenses under 42 U.S.C. § 3612(c), even though punitive damages were awarded her under 42 U.S.C. § 1982. What plaintiff seeks to do, essentially, is to select from among the statutory remedies available to a victim of racial discrimination in the housing market and to assemble that package of relief which maximizes her recovery. Defendants do not oppose awarding plaintiff reasonable attorney's fees; but they argue strongly that any amount awarded should be taken from her punitive damages award.

■ Neither plaintiff nor *amicus* has directed the Court's attention to any case where it was held that a prevailing plaintiff in a housing discrimination suit is entitled to recover punitive damages in excess of $1,000 under §. 1982 and simultaneously to receive attorney's fees under § 3612(c). The Court is aware that in general a plaintiff is not obliged to elect remedies under the civil rights statutes, and that restrictions contained in one statute have not been incorporated into the other.[7] But the Court is unaware of any other case where the precise issue presented here was raised and adjudicated.

Preliminarily, the Court notes that plaintiff has not demonstrated that she qualifies for an award of counsel fees under § 3612(c) even if the Court were to determine that such an award is permissible in the circumstances of this case. Section 3612(c) allows attorney's fees only when "plaintiff in the opinion of the court is not financially able to assume said attorney's fees." There is nothing presently before the Court, by way of affidavit or otherwise, which would enable the Court to determine that plaintiff satisfies that statutory provision. However, the Court does not reach this issue, nor does it reach the more difficult question of the interrelationship of §§ 1982 and 3612(c) for the purpose of awarding attorney's fees, in light of the Court's decision, explained below, to award plaintiff attorney's fees and costs directly under § 1982.

In *Alyeska Pipeline Co. v. Wilderness Society, supra,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, the Supreme Court held that, while a successful plaintiff generally may not recover counsel fees as a "private attorney general" in the absence of express statutory authorization, a plaintiff may nevertheless recover such fees

"when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .' *F. D. Rich Co.,* 417 U.S., at 129 [94 S.Ct., at 2165] (citing *Vaughan v. Atkinson,* 369 U.S. 527 [82 S.Ct. 997, 8

---

7. In *Jones v. Mayer Co., supra,* 392 U.S. at 416–417 n. 20, 88 S.Ct. at 2191, 20 L.Ed.2d at 1194, the Supreme Court stated:

"At oral argument, the Attorney General expressed the view that, if Congress should enact the pending bill [the Civil Rights Act of 1968], § 1982 would not be affected in any way but 'would stand independently.' That is, of course, correct. The Civil Rights Act of 1968 does not mention 42 U.S.C. § 1982, and we cannot assume that Congress intended to effect any change, either substantive or procedural, in the prior statute. See *United States v. Borden Co.,* 308 U.S. 188, 198–199 [60 S.Ct. 182, 188, 84 L.Ed. 181]. See also § 815 of the 1968 Act: 'Nothing in this title shall be construed to invalidate or limit any law of . . . any . .

jurisdiction in which this title shall be effective, that grants, guarantees, or protects the . . . rights . . . granted by this title . . . .' "

This statement of the law has been recognized by many courts in a number of varying contexts, e. g., *Warren v. Norman Realty Co.,* 513 F.2d 730, 732 (8 Cir. 1975) (statute of limitations of 1968 Act inapplicable to § 1982); *Hickman v. Fincher,* 483 F.2d 855, 857 (4 Cir. 1973) (same); *Clemons v. Runck, supra,* 402 F.Supp. at 868 (punitive damages under § 1982 not limited by § 3612); *Wright v. Kaine Realty Co., supra,* 352 F.Supp. at 223 (same); *McLaurin v. Brusturis,* 320 F.Supp. 190, 191 (E.D. Wis.1970) (limitation under § 3610(d) on availability of remedies inapplicable to § 1982).

L.Ed.2d 88] (1962)); cf. *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580 [66 S.Ct. 1176, 1179, 90 L.Ed. 1447] (1946). These exceptions are unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations, unless forbidden by Congress * * *." 421 U.S. at 258–259, 95 S.Ct. at 1622, 44 L.Ed.2d at 154.

Subsequent to the decision in *Alyeska Pipeline,* at least one other court has awarded attorney's fees under § 1982 in a housing discrimination suit based on the exception set forth above. *Cf. Clemons v. Runck, supra,* 402 F.Supp. at 871. Attorney's fees have also been awarded under that exception in recent cases brought under 42 U.S.C. § 1983, *e. g., Doe v. Poelker,* 515 F.2d 541, 547–548 (8 Cir. 1975); *Miller v. Carson,* 401 F.Supp. 835, 857 (M.D.Fla.1975).

■ The Court believes that this is also an appropriate case for awarding counsel fees under that exception. The conduct complained of here and proven at trial was no less vexatious or oppressive than that of the defendants in other lawsuits where counsel fees were awarded pursuant to that exception.[8] As set forth in footnote 6, the Court instructed the jury that the only basis for assessing punitive damages against either or both of the defendants was if the jury unanimously found that the defendants had acted "maliciously, or wantonly, or op-

pressively." The jury's assessment of $5,000 punitive damages against each defendant is thus a clear and unambiguous finding that defendants had so acted. The Court has previously stated that, in its opinion, there was sufficient evidence on which the jury could have made such a finding. Therefore, the Court holds that under the circumstances present here, it is empowered to award plaintiff attorney's fees and court costs under 42 U.S.C. § 1982.

Whether those fees and costs should be awarded is, of course, a matter within the discretion of the Court. Defendants suggest that the Court grant plaintiff's motion for attorney's fees, but that any amount awarded be taken from the punitive damages assessed against them. This suggestion is totally unacceptable; under the guise of granting plaintiff's motion, the Court would instead be denying her the relief she seeks and completely nullifying the intent and effect of its ruling. If the Court wished plaintiff to pay her own attorney's fees, the far better course would be to deny her motion directly rather than adopt the roundabout approach suggested by defendants.

The Court has carefully considered plaintiff's motion, unopposed by defendants except as noted above, and concludes that the equities of this case militate in favor of an award of attorney's fees. It is beyond dispute that the elimi-

---

8. In *F. D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129 n. 17, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1975), cited in the quotation from *Alyeska Pipeline* set forth in the text, the Supreme Court cited several cases in which counsel fees were awarded because the defendant had acted in bad faith, vexatiously, wantonly, or for oppressive reasons. In *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), respondent shipowner made no investigation of petitioner seaman's claim for maintenance and cure and "forced [petitioner] to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old." 369 U.S. at 531, 82 S.Ct. at 999, 8 L.Ed.2d at 92. *McEnteggart v. Cataldo,* 451 F.2d 1109, 1112 (1 Cir. 1971), *cert. denied,* 408 U.S. 943, 92 S.Ct. 2878, 33 L.Ed.2d 767 (1972), concerned a nontenured college teacher

who was awarded counsel fees because the college refused to provide him with a statement of the reasons for nonrenewal of his contract until ordered to do so by the court, despite an earlier decision of the Court of Appeals for the First Circuit involving other litigants which held that such a statement must be furnished. The court awarded attorney fees to plaintiffs in *Bell v. School Board of Powhatan County, Virginia,* 321 F.2d 494, 500 (4 Cir. 1963), because of defendant's "long continued pattern of evasion and obstruction * * * to thwart the valid wishes of the plaintiffs for a desegregated education." And in *Rolax v. Atlantic Coast Line R. Co.,* 186 F.2d 473, 481 (4 Cir. 1951), counsel fees were awarded because defendant union had subjected plaintiffs—black members of that union—to "discriminatory and oppressive conduct."

nation of racial discrimination in the sale and rental of housing is a national policy of the highest priority. *Trafficante v. Metropolitan Life Ins.,* 409 U.S. 205, 211, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). Defendants' conduct was found by the jury utterly to have subverted that policy; defendants themselves were further found to have acted maliciously, wantonly, or oppressively. The Court must give great weight to the jury's verdict, suggesting as it does that the jury found defendants' testimony unworthy of belief. Also to be considered are the relevant financial positions of these litigants. To be sure, the jury's award of punitive damages was not, as defendants rightly point out, intended to enrich plaintiff. Nevertheless, on balance, the Court concludes that in the totality of the circumstances present here justice is better served by granting plaintiff's motion for attorney's fees and court costs.[9]

IT IS HEREBY ORDERED that defendants' motion for a new trial is denied.

IT IS HEREBY FURTHER ORDERED that plaintiff's motion for attorney's fees and court costs is granted, and that defendants shall pay plaintiff the sum of six thousand four hundred forty-three and thirty-five hundredths dollars ($6,443.35) for said attorney's fees and court costs.

---

9. Plaintiff's counsel declared that they expended a total of 125.45 hours in the preparation and trial of this case and claim compensation at a rate of $50 per hour. In addition, they claim $170.85 costs, for a total claim of $6,443.35. Defendants apparently do not contend that the amount claimed is unreasonable or excessive. The Court has independently reviewed the itemization of time submitted by plaintiff's counsel and finds that the hours expended and the requested rate of compensation are both reasonable under the circumstances of this case. Accordingly, plaintiff's counsel will be awarded the full amount of their requested compensation.